UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM HOWER MELENDEZ,

    Plaintiff,

-vs-                                                                 Case No. 8:10-cv-467-T-30AEP

DEPUTY SAYER, et al.,

    Defendants.
_____/

## **ORDER**

Plaintiff, an inmate confined at the Pasco County Jail, Land O'Lakes, Florida, filed a civil rights complaint *pro se* on February 18, 2010 (Dkt. 1). Plaintiff also filed an Affidavit of Indigency in support of his motion to proceed in this action *in forma pauperis* (Dkt. 3). His complaint relates to events which allegedly occurred on July 18, 2009, when Deputy Sayer sprayed mace on Plaintiff, and July 21, 2009, when Plaintiff was allegedly denied due process during prison disciplinary proceedings. Plaintiff names Deputy Sayer, Lt. Perron, and Corporal Barsanti as defendants in this action.

**Standard of Review**

Because Plaintiff filed this action against governmental employees while incarcerated, the Court is required to screen his action under 28 U.S.C. § 1915A(b). Section 1915A provides that:

> "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

> governmental entity. . . . On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint – is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief."

28 U.S.C. § 1915A(a) and (b)(1) & (2). Section 1915A requires that prisoner complaints be screened in the same manner as under § 1915(e)(2)(B) where a governmental official has been sued regardless of whether the $350.00 filing fee has been paid. *Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (finding that § 1915A "applies to any suit by a prisoner against certain government officials or entities regardless of whether that prisoner is or is not proceeding IFP."), *cert. denied*, 527 U.S. 1041 (1999). The phrase "fails to state a claim upon which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii).").

Pleadings drafted by laymen are to be interpreted by application of less rigid standards than those applied to formal documents prepared by lawyers. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (holding that "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys"). A plaintiff is not required to prove his claim in his complaint, but he must allege sufficient facts in the complaint which, when viewed in the light most favorable to plaintiff, support the conclusion that he may be able to establish that he is entitled to the relief he seeks under § 1983.

**Background**

Plaintiff's complaint essentially alleges the following: On July 18, 2009, Deputy Sayer called out to Plaintiff. Plaintiff exited his cell and approached Deputy Sayer. Deputy Sayer stated that Plaintiff was on "dead lock status" and asked him why he was out of his cell. Plaintiff responded that he came out of his cell because Deputy Sayer had called him. He then asked Deputy Sayer how much more time he had to spend in "lock down." Deputy Sayer answered "30 days." Plaintiff thought that was inaccurate, and therefore he asked Deputy Sayer to call a Sergeant. Deputy Sayer refused. Plaintiff again asked Deputy Sayer to contact a Sergeant, to which Deputy Sayer replied "I ain't calling shit so get your ass back to your cell!" Plaintiff, however, refused to return to his cell. Deputy Sayer then grabbed Plaintiff by his shirt sleeve and tried to pull Plaintiff in an effort to get Plaintiff to go back to his cell. Plaintiff, however, refused to move. Deputy Sayer then let go of Plaintiff's shirt. When Plaintiff refused to leave, Deputy Sayer again tried to pull Plaintiff by his shirt sleeve in order to get him to move. Plaintiff continued to refuse to leave. Then, Deputy Sayer took a can of mace and sprayed Plaintiff in the face. Plaintiff turned around and went away from Deputy Sayer and towards his cell. Deputy Sayer followed him and continued to spray him on the back of his head. As Plaintiff entered his cell, a few other deputies threw him on the floor, handcuffed him, and pushed him face first through a door as they were escorting him out of the housing unit.

Later, Plaintiff was taken to the prison's psychiatric ward where he was placed in an isolation cell. While housed there, he was told by another deputy that Deputy Sayer accused

3

Plaintiff of hitting him.

The complaint then alleges the following:

> On 7-21-09 a disciplinary hearing was had on a disciplinary report incident no. 2009005685. The hearing officer claimed later that the that the D.R. Hearing of Incident no. 2009005717 was heard on the same date. If both hearing reports are compared they will reflect by diffrence [sic] of date's [si] and times that they were not heard as claimed. Also the incident report (submitted) by Deputy Sayer claiming I struck or attempted to strike him shows how Deputy Sayer lied to justify his accessive [sic] use of force and in the hearing report #3652 it clearly shows a finding on U.O.F. Use of force of not guilty. Knowing the discrepancy's [sic] existed Lieutenant Perron still signed the approval accepting the decision submitted by the hearing officer corporal Barsanti.

(Dkt. 1 at pgs. 9-10).

Plaintiff claims Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution, and violated several Florida Model Jail Standards (Dkt. 1 at pg. 8). For relief, he seeks 1 million dollars in damages against each Defendant (Dkt. 1 at pg. 11).

## Discussion

In any § 1983 action, the initial inquiry must focus on whether two essential elements are present:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States.

*Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir. 1996) (citations omitted); *see also Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995). If either element is missing, the complaint fails. In addition, for liability under 42 U.S.C. §1983, Plaintiff must allege an

4

affirmative causal connection between the Defendants' conduct and the constitutional deprivation. *See Swint v. City of Wadley, Alabama*, 51 F.3d 988 (11th Cir. 1995); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

"In any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998). In addition to identifying the constitutional right at issue, a § 1983 complaint must be well-pled. Vague and conclusory allegations lacking factual support cannot support a viable § 1983 cause of action.

### 1. Claims against Defendant Sayer

#### a. Excessive Force/Eighth Amendment Claim

The Eighth Amendment attaches "after conviction and sentence" and protects incarcerated prisoners from punishment that is "cruel and unusual." *Graham v. Connor*, 490 U.S. 386, 392 n. 6, 394 (1989). The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain. . ., the infliction of pain totally without penological justification..., [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

To establish an Eighth Amendment claim, a prisoner must prove both an objective and subjective component. First, the prisoner must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, he must show that "the officials act[ed] with a sufficiently culpable state of mind," i.e., that they acted

5

"maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

In *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), the Eleventh Circuit Court of Appeals stated:

> Whether a jailer's use of force is excessive, and thus violates the inmate's Fourteenth Amendment right to be free from cruel and unusual punishment, depends on whether the jailer's act "shocks the conscience," *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was applied . . . maliciously and sadistically for the very purpose of causing harm.'" *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Court. 1078, 1085, 89 L. Ed. 2d 251 (1986)). To evaluate whether actions shock the conscience, we consider the following factors: (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury. *Whitley*, 475 U.S. at 321, 106 S. Court. at 1085. In addition to those three factors we consider as fourth and fifth factors, "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them, and any efforts made to temper the severity of a forceful response." *Id*. When we consider whether the jailers' use of force was excessive, we must "give a wide range of deference to prison officials acting to preserve discipline and security." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

*Id*. at 1307.

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Id*. (citation omitted). "Pepper spray is an accepted non-lethal means of controlling unruly inmates." *Id*. (citations omitted).

Viewing the allegations of the complaint in the light most favorable to Plaintiff, the Court concludes that Deputy Sayer's use of force did not violate the Eighth Amendment. First, because Plaintiff refused Deputy Sayer's verbal order to return to his cell, then physically resisted being moved when Deputy Sayer twice attempted to pull Plaintiff by his shirt back to his cell, Deputy Sayer clearly was entitled to use force against Plaintiff in an

effort to get Plaintiff to comply with Deputy Sayer's orders, and quell any escalating disturbance. *See Id.* (citing *Bennett*, 898 F.2d at 1533)("[t]he need for the use of force [was] established by the undisputed evidence that [the inmate] created a disturbance.").

Second, since Plaintiff refused Deputy Sayer's verbal order to return to his cell, then resisted Deputy Sayer's two attempts to move him back to his cell by pulling his shirt, the use of the spray on Plaintiff was not excessive. *Id*. ("A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.") (citations omitted). *See also Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (holding that the use of a type of pepper spray called capstun against a prisoner was not a violation of the Eighth Amendment when he had disobeyed a supervisor's order and then questioned a guard's order). Further, because "[p]epper spray is designed to disable a suspect without causing permanent physical injury...[and] is a very reasonable alternative to escalating a physical struggle[,] " Deputy Sayer's spraying Plaintiff on the back of Plaintiff's head as Plaintiff turned and moved away from Deputy Sayer was also not excessive.[1]

Third, Plaintiff does not allege any injury as a consequence of this allegedly excessive use of force. Therefore, the third *Whitley* factor does not favor finding a constitutional violation.

Fourth, because Plaintiff created a disturbance by failing to obey Deputy Sayer's order and by resisting his efforts to pull Plaintiff by his shirt back to his cell, "[t]he fourth *Whitley*

---

[1] To the extent Plaintiff's complaint alleges that other guards threw him on the ground, handcuffed him, then pushed him through a door face first, said allegations have no causal connection to any defendant named in this action. Further, under the facts alleged in the complaint, said use of force does not "shock the conscience" and was not applied for the very purpose of causing harm.

7

factor, which requires an assessment of 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them,'...does not support a finding of a constitutional violation..." *See Danley*, 540 F.3d at 1308 (quotation omitted).

Fifth and finally, Deputy Sayer first verbally ordered Plaintiff to return to his cell. When Plaintiff refused the verbal order, Deputy Sayer then attempted to move Plaintiff back to his cell by pulling him by his shirt sleeve. Plaintiff resisted and refused to return to his cell. Then, Deputy Sayer again attempted to move Plaintiff back to his cell by pulling him by his shirt sleeve. Plaintiff again resisted and refused to move. Deputy Sayer did not use the spray on Plaintiff until Plaintiff refused a verbal order to return to his cell, then resisted two attempts by Deputy Sayer to pull Plaintiff by his shirt sleeve back to his cell. Thus, the Court concludes that Deputy Sayer did enough to "temper the severity of [his] forceful response." *Whitley*, 475 U.S. at 321.

### b. Due Process/Fourteenth Amendment Claim

To the extent Plaintiff's complaint asserts that Deputy Sayer violated Plaintiff's due process rights when he wrote a false disciplinary report claiming Plaintiff had hit him in order to justify his use of force against Plaintiff, the complaint fails to state a claim upon which relief may be granted. "A prisoner's allegation of false disciplinary charges fails to state a claim so long as due process was provided." *O'Bryant v. Finch*, 2008 U.S. Dist. LEXIS 110015 at *26 (N.D. Fla. 2008) (citing *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006); *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999); *Hanrahan v. Lane*,

8

747 F.2d 1137, 1140 (7th Cir. 1984)).

2. **Claims against Defendants Perron and Barsanti**

It appears that Plaintiff's complaint alleges that Defendants Perron and Barsanti violated Plaintiff's due process rights during the prison disciplinary proceedings regarding the three disciplinary reports he received from Deputy Sayer on July 18, 2009, for use of force, refusing to obey order of staff, and conduct which disrupts (Dkt. 1 at pg. 12). Specifically, it appears Plaintiff's complaint alleges that his due process rights were violated because the disciplinary hearing was heard by only one hearing officer instead of a three person disciplinary committee; he did not receive copies of the charges against him; and the hearing officer did not call "witnesses who are reasonably available and who are determined to be necessary for an explanation of a written statement." (Id. at pgs. 8, 12).

The Due Process Clause does not directly protect an inmate from changes in the conditions of his confinement, as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution or outside the sentence imposed upon him. *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). Due process is required only if a person is deprived of an interest protected by the Due Process Clause. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that inmates may be deprived of a liberty interest only if the manner or character of their confinement amounts to a "dramatic departure from the basic conditions of [the inmate's] sentence." 515 U.S. at 486. The Court limited the field to those deprivations that "exceed[] the sentence in such an unexpected

manner as to give rise to protection by the Due Process Clause of its own force" or those that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*.

"In cases where a disciplinary decision does not result in the loss of gain time, and the only penalty is placement in disciplinary confinement for thirty days, due process protections do not attach." *Hall v. Leavins*, 2009 U.S. Dist. LEXIS 82582 at *14 (N.D. Fla. 2009) (citing *Sandin v. Conner*, 515 U.S. at 485). In the instant case, Plaintiff was found guilty of two disciplinary infractions: refuse to obey order of staff, and conduct which disrupts (Dkt. 1 at pg. 12). As a result, he lost "15 days...of hour out consecutively on each charge to be run concurrently with his current disciplinary sanctions with credit for time served." (Id.). This Court concludes that Plaintiff's loss of a total of 30 days of "hour out" with credit for time served is insufficient to trigger due process protections. *See Sandin*, 515 U.S. at 486 (thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection); *see also Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (placement in administrative confinement for two months did not constitute deprivation of constitutionally protected liberty interest as defined in *Sandin*). Therefore, Plaintiff cannot establish the deprivation of a protected liberty interest, or a due process violation, with regard to the disciplinary proceedings.

Further, even if Plaintiff could establish a protected liberty interest, he fails to allege sufficient facts demonstrating a due process violation during the disciplinary proceedings. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court enunciated the minimal

procedural due process protections which are to be afforded to a prisoner in prison disciplinary proceedings: 1) advance written notice of the claimed violation; 2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and 3) opportunity to call witnesses and present documentary evidence in defense, unless this would be unduly hazardous to institutional safety or correctional goals. *Id*., at 563-66.

Plaintiff's complaint does not specifically allege the denial of any of these procedural safeguards. To the extent the complaint intimates that Plaintiff did not receive notice of the charges against him (Dkt. 1 at pg. 12), the "Hearing Report" reveals that Plaintiff signed a document indicating he had received notice of the charges (Id.). To the extent the complaint may be construed as alleging a denial of witnesses during the disciplinary hearing (Dkt. 1 at pg. 8), Plaintiff wholly fails to allege any facts showing that he was prejudiced by the absence of witnesses. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error analysis applies to prison disciplinary proceedings); *cf. Morzella v. Middlebrooks*, 2006 U.S. Dist. LEXIS 95073 at *10 (N.D. Fla. 2006) ("Courts have held that even though a procedural violation may have occurred during a disciplinary hearing, the disciplinary finding should not be overturned on federal habeas review unless the error was prejudicial.") (citations omitted). Plaintiff does not identify any witnesses, or the substance of their testimony. Moreover, Plaintiff was found not guilty of the use of force charge, and guilty of the refuse to obey order of staff, and conduct which disrupts charges (Dkt. 1 at pg. 12). Plaintiff concedes in his complaint that he refused Deputy Sayer's order to return to his cell,

and his resistence to Deputy Sayer's order and attempts to move Plaintiff by his shirt sleeve clearly was disruptive conduct. Therefore, Plaintiff cannot show prejudice since the complaint's factual allegations establish the disciplinary violations.

Finally, to the extent the complaint alleges a violation of due process because his disciplinary hearing was before a single hearing officer and not a panel of three committee members, Plaintiff fails to show that he has a due process right to a disciplinary hearing before three committee members instead of a single hearing officer. Furthermore, his complaint wholly fails to allege any facts showing prejudice as a result of the disciplinary hearing before a single hearing officer.

### 3. Failure to follow Florida Model Jail Standards

Plaintiff's complaint alleges that Defendants failed to follow several "Florida Model Jail Standards rules of procedure (Dkt. 1 at pg. 8). The failure to follow institutional rules and regulations, however, standing alone does not constitute a violation of Plaintiff's due process rights. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."). *See also Harris v. Birmingham Board of Education*, 817 F.2d 1525, 1528 (11th Cir. 1987); *Smith v. Georgia*, 684 F.2d 729, 733 n.6 (11th Cir. 1982) ("not every violation by a state agency of its own rules rises to the level of a due process infringement"). Plaintiff's complaint does not allege facts showing that Defendants failed to satisfy the *Wolff* requirements during the disciplinary proceedings, or otherwise violated his constitutional rights. Therefore, any

failure to follow prison policies or procedures did not violate his right to due process or other constitutional rights.

ACCORDINGLY, the Court **ORDERS** that:

1. Plaintiff's complaint (Dkt. 1) is dismissed with prejudice for failure to state a claim upon which relief may be granted.

2. The Clerk shall enter judgment against Plaintiff, terminate any pending motions, and close this case.

DONE and ORDERED in Tampa, Florida on March 23, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA: sfc
Copy to: *Pro Se* Plaintiff